**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Equal Employment Opportunity Commission, ) ) Plaintiff, ) ) vs. ) ) Collegeville/Imagineering, a Delaware ) limited partnership; and Rubie's ) Costume Company, Inc., a New York ) corporation, ) ) Defendants. ) ) | No. CV-05-3033-PHX-DGC **ORDER** |

Pending before the Court are Plaintiff's motion for partial summary judgment and Defendants' motion for summary judgment. Dkt. ##148, 150. As explained below, the Court will grant Plaintiff's motion in part and deny Defendants' motion.[1]

**I.  Background.**

Defendant Collegeville/Imagineering ("Collegeville") manufactures and sells costume makeup. Collegeville is located in Phoenix, Arizona. Defendant Rubie's Costume Company ("Rubie's"), a New York corporation, owns Collegeville.

---

[1]The request for oral argument is denied because the parties have thoroughly discussed the law and evidence and oral argument will not aid the Court's decisional process. *See Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999).

Plaintiff Equal Employment Opportunity Commission ("EEOC") filed a complaint against Defendants on September 30, 2005. The complaint asserted sexual harassment and retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII"). Plaintiff sought to correct alleged unlawful employment practices and provide relief to the alleged victim, Linda Honer. Dkt. #1.

Plaintiff filed an amended complaint on July 13, 2006. The amended complaint asserts four claims under Title VII: sexual harassment, retaliation, constructive discharge, and reporting violations. Plaintiff seeks injunctive relief, punitive damages, and compensatory damages on behalf of Honer, Rosa Limon, Linda Avalos, and a class of similarly situated women. Dkt. #35.

Defendants filed an answer on August 7, 2006, denying liability and asserting fifteen affirmative defenses. Dkt. #39. Plaintiff subsequently identified Nohemi Landin, Lorena Duarte, Maria Mata, Veronica Coronel, and Teresa Lopez as additional class members, and Jessica Moore and Ana Lujan as potential class members.

**II.    Summary Judgment Standard.**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©). "Only disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Summary judgment may be entered against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**III.    Discussion.**

Plaintiff seeks summary judgment on Title VII's conciliation requirement and nine affirmative defenses: failure to exhaust administrative remedies, statute of limitations,

1 laches, unclean hands, lack of authority, good faith efforts, waiver and estoppel, after-
2 acquired evidence, and justification. Defendants cross-move for summary judgment on the
3 first six of these defenses. Defendants also seek summary judgment on Honer's constructive
4 discharge claim, Limon's retaliation claim, and all claims by Lopez, Moore, and Lujan.
5 Finally, Defendants argue that Plaintiff has not satisfied the jurisdictional prerequisites
6 for bringing a suit involving alleged sexual harassment by Collegeville's plant manager,
7 Mark Nitz.

**A.    Conciliation.**

Title VII provides that where the EEOC finds reasonable cause to believe that a charge is true, it "shall endeavor to eliminate any such unlawful employment practice by informal methods of conference, conciliation, and persuasion." 42 U.S.C. § 2000e-5(b). The EEOC may bring suit under Title VII only if it "has been unable to secure from the [employer] a conciliation agreement acceptable to the [EEOC]." 42 U.S.C. § 2000e-5(f)(1). Given these requirements, a showing of some good faith effort at conciliation is a "jurisdictional condition precedent to suit by the EEOC." *EEOC v. Pierce Packing Co.*, 669 F.2d 605, 608 (9th Cir. 1982).

Plaintiff argues that it is entitled to summary judgment because it made good faith efforts to conciliate the charges in this case and ended conciliation only after Defendants failed to make a monetary offer acceptable to Plaintiff. Dkt. #148 at 3-6. Defendants contend that Plaintiff "did little more than go through the motions, without making the requisite effort, flexibility or desire to resolve the matter through conciliation." Dkt. #167 at 10. Defendants assert that Plaintiff was focused on obtaining large monetary relief for the charging parties and abandoned the conciliation process when Defendants objected to paying more than nominal damages. *Id.* at 11.

Conciliation in this case occurred in two rounds. The first round was initiated by Plaintiff in September 2004 and involved the initial charges filed by Honer, Limon, and Avalos. Plaintiff sent conciliation proposals to Defendants in January and February 2005. On May 26, 2005, Plaintiff informed Defendants that their failure to offer monetary damages

1  to the charging parties would result in conciliation failure. Defendants provided Plaintiff
2  with a written counteroffer on July 14, 2005. Plaintiff rejected the offer on the ground that
3  it did not adequately compensate the charging parties. Plaintiff notified Defendants that
4  conciliation had failed in August 2005. Dkt. #149 ¶¶ 17-22; Dkt. #168 ¶¶ 133, 141-43.

5  The second round of conciliation began in January 2006 after Plaintiff had issued
6  determination letters finding reasonable cause to believe that Defendants had retaliated
7  against Limon and Avalos and had subjected a class of women to sexual harassment.
8  Plaintiff invited Defendants to participate in conciliation and provided Defendants with an
9  outline of Plaintiff's proposed conciliation agreement. On April 13, 2006, Plaintiff informed
10 Defendants that their failure to indicate a willingness to conciliate or make a reasonable offer
11 would result in conciliation failure. Plaintiff ended the conciliation process on April 26,
12 2006. Dkt. #149 ¶¶ 24-31.

13 This undisputed evidence does not support Defendant's contention that Plaintiff
14 "did little more than go through the motions." Dkt. #167 at 10. Plaintiff invited Defendants
15 to conciliate this matter on two separate occasions, provided Defendants with conciliation
16 proposals, and filed suit only after it had determined that Defendants' monetary offer was
17 insufficient and conciliation had failed. While Defendants may believe that Plaintiff acted
18 unreasonably in seeking more than nominal damages for the charging parties, case law makes
19 clear that the good faith requirement is an "easy burden to satisfy" and that the EEOC has
20 "substantial discretion" in determining that conciliation has failed. *EEOC v. Mitsubishi*
21 *Motor Mfg. of Am., Inc.*, 990 F. Supp. 1059, 1091 (C.D. Ill. 1998); *see EEOC v. N. Cent.*
22 *Airlines*, 475 F. Supp. 667, 669 (D. Minn. 1979) ("[I]f some conciliation efforts have
23 occurred, substantial deference should be given to the EEOC's determination that
24 conciliation efforts have failed[.]"); *EEOC v. Wayside World Corp.*, 646 F. Supp. 86, 89
25 (W.D. Va. 1986) (rejecting argument that EEOC took an "all or nothing approach";
26 deference must be given to the EEOC's determination that conciliation had failed).

27 The Court concludes that Plaintiff satisfied the modest jurisdictional prerequisites to
28 filing this action. *See* 42 U.S.C. § 2000e-5(f)(1) ("If . . . the Commission has been unable

to secure from the respondent a conciliation agreement *acceptable to the Commission*, the Commission may bring a civil action against [the] respondent[.]") (emphasis added); *see also* 29 C.F.R. § 1601.25 ("Where the Commission is unable to obtain voluntary compliance . . . and *it determines* that further efforts to do so would be futile or non-productive, it shall . . . so notify the respondent in writing.") (emphasis added); *EEOC v. Keco Indus., Inc.*, 748 F.2d 1097, 1101-02 (6th Cir. 1984) ("The EEOC is under no duty to attempt further conciliation after an employer rejects its offer."); *EEOC v. Greyhound Lines, Inc.*, 411 F. Supp. 97, 102 (W.D. Pa. 1976) ("Title VII does not define or require a standard conciliation process. . . . It is enough that [the] EEOC attempted to conciliate this matter before the complaint was filed."). The Court will grant Plaintiff's motion with respect to this issue.

**B.     Exhaustion of Administrative Remedies and Statute of Limitations.**

Plaintiff argues that Defendants have presented no evidence in support of their statute of limitations and failure to exhaust administrative remedies defenses. Dkt. #148 at 15, 17. Defendants address this argument only with respect to Lopez's hostile work environment claim. Defendants contend that this claim is time-barred because Lopez does not recall when the harassment occurred. Dkt. #150 at 18. While it is true that Lopez could not recall the exact date of each act of harassment, she testified that manager Paul Cooley pulled her up by her pants on September 11, 2001. Dkt. #171 ¶ 205. Because this conduct occurred within 300 days of the filing of lead claimant Honer's charge on July 5, 2002, Lopez's claim is not time-barred. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117-18 (2002) ("In order for the charge to be timely, the employee need only file a charge within . . . 300 days of any act that is part of the hostile work environment."); *Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 923 (9th Cir. 1982) (finding non-filing class members governed by the statute of limitations of charging parties). Because there is no genuine issue of material fact as to whether the charging parties exhausted their administrative remedies or filed timely claims, the Court will grant summary judgment in Plaintiff's favor with respect to these issues.

**C.     Laches.**

To establish a laches defense, Defendants must show unreasonable delay on the part

1  of Plaintiff and prejudice to Defendants. *See Bratton v. Bethlehem Steel Corp.*, 649 F.2d
2  658, 666 (9th Cir. 1980). Defendants contend that the thirty-nine month period from the time
3  of Honer's charge to the time Plaintiff commenced this action, and the forty-seven month
4  period from the filing of charges by Limon and Avalos and the filing of the amended
5  complaint, constitute unreasonable delay. Doc. #150 at 14-15. Defendants further contend
6  that during this delay several witnesses have become unavailable, memories have faded, and
7  certain evidence has been lost by the EEOC, resulting "in a one-sided preservation of
8  evidence." *Id.*

9  Plaintiff argues that forty seven months is not an unreasonable period of time within
10 which to investigate, conciliate, and formally assert class claims of discrimination and
11 retaliation. Plaintiff further argues that any prejudice caused by the loss of evidence affects
12 both sides equally and resulted not from any delay on Plaintiff's part, but from Defendants'
13 own failure to act diligently in preserving evidence once it received notice of the charges.
14 Dkt. #148 at 11-12; Dkt. #170 at 3-6.

15 "Laches is an equitable doctrine, its application depending on the facts of the
16 particular case." *Gifford v. Atchison, Topeka, & Santa Fe Ry. Co.*, 685 F.2d 1149, 1152
17 (9th Cir. 1982). The Ninth Circuit has made clear that "[l]aches questions are seldom
18 susceptible of resolution by summary judgment, because where laches is raised as a defense
19 the factual issues involved can rarely be resolved without some preliminary evidentiary
20 inquiry." *Bratton*, 649 F.2d at 666 (quotation marks and citations omitted).

21 Having reviewed the voluminous record in this case (*see* Dkt. ##149, 153-55, 168-69,
22 171-72), the Court concludes that there are genuine issues of material fact as to whether
23 Plaintiff's claims are barred by the doctrine of laches. This is so because issues of delay and
24 prejudice are intertwined closely, and the Court "must examine each claim alleged and
25 remedy sought to determine if sufficient prejudice and delay support [Defendants'] request
26 for dismissal[.]" *Gifford*, 685 F.2d at 1158 (Wright, J., concurring). The Court will deny
27 summary judgment on the laches defense. *See id.* at 1152.

28

### D. Unclean Hands.

Defendants contend that Plaintiff's delay in prosecuting this action constitutes bad faith which bars its request for injunctive relief. Dkt. #150 at 15-16. Defendants "rely on the 'clean hands' doctrine, which insists that one who seeks equity must come to the court without blemish." *EEOC v. Recruit U.S.A., Inc.*, 939 F.2d 746, 752 (9th Cir. 1991). "[T]he clean hands doctrine should not be strictly enforced when to do so would frustrate a substantial public interest. In such cases, equity's lodestar that 'justice be done' prevails." *Id.* at 753.

"The EEOC is charged with administering, interpreting, and enforcing Federal anti-discrimination laws, and as such effectuates a compelling public interest." *EEOC v. Lexus of Serramonte*, No. C 05-0962 SBA, 2006 WL 2619367, at *2 (N.D. Cal. Sept. 12, 2006). The Ninth Circuit has held that barring injunctive relief on "the basis of the EEOC's unclean hands would disserve the public interest in eliminating [sex] discrimination in employment," and "would 'place a potent weapon in the hands of employers who have no interest in complying voluntarily with [Title VII], who wish instead to delay as long as possible investigations by the EEOC.' Equity does not command such a result." *Recruit U.S.A.*, 939 F.2d at 754-55 (quoting *EEOC v. Shell Oil Co.*, 466 U.S. 54, 81 (1984)); *see also Lexus of Serramonte*, 2006 WL 2619367, at *3 (granting summary judgment in the EEOC's favor on the unclean hands defense). The Court accordingly will grant summary judgment in Plaintiff's favor with respect to the unclean hands defense.

### E. Lack of Authority.

Defendants argue that Rubie's cannot be held liable for the acts of Collegeville because the two entities maintain separate operations. Dkt. #150 at 20-21; Dkt. #167 at 15. Plaintiff contends that Rubie's and Collegeville operate as a single enterprise. Dkt. #170 at 18; Dkt. #176 at 6-7.

This Circuit applies a four-part test to determine whether two entities are an integrated enterprise for purposes of Title VII: (1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership or financial control.

*See Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 815 (9th Cir. 2002). In this case, there are genuine issues of fact as to the first three factors. *See* Dkt. #153 ¶¶ 120-23; Dkt. #117 ¶¶ 239-92. The Court will deny summary judgment on the lack of authority defense.

### F. Good Faith Efforts.

Defendants argue that punitive damages are not available in this case because Defendants made good faith efforts to comply with Title VII by having a policy against sexual harassment, investigating the claims of harassment, and disciplining the alleged harassers. Dkt. #150 at 16; Dkt. #167 at 13-14. Plaintiff contends that Defendants did not respond to Plaintiff's discovery requests regarding this defense and therefore have improperly asserted new factual bases in support of the defense. Dkt. #176 at 5. Plaintiff further contends that the newly disclosed evidence does not create a triable issue as to whether Defendants made good faith efforts to comply with Title VII. Dkt. #176 at 6; Dkt. #170 at 8-11.

The Court will deny summary judgment on this issue. Plaintiff may, however, raise objections to the purported newly disclosed evidence in a motion in limine filed prior to the final pretrial conference. The Court will determine whether there is a triable issue with respect the good faith efforts defense after it receives Plaintiff's motion and Defendants' response.

### G. Waiver.

Defendants contend that this action is barred by the doctrine of waiver because Plaintiff delayed filing suit and Honer failed to complain internally about the alleged harassment. Dkt. #167 at 16-17. The Supreme Court has stated that a plaintiff does not forfeit substantive rights under Title VII absent a voluntary and knowing waiver. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 51 n.15 (1974); *see Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1129 (7th Cir. 1997) ("[B]efore an employee cedes a substantive right grounded in federal statutory law, she must understand and freely make the decision to do so.") (citing *Alexander*); *Cox v. Allied Chem. Corp.*, 538 F.2d 1094, 1098 (5th Cir. 1976) (expressing "deep concern over the necessity for establishing voluntariness before

finding an effective waiver of a plaintiff's Title VII rights").

Defendants have presented no evidence showing that Honer was aware of her Title VII rights when she allegedly failed to complain to Defendants about the harassment. Nor have Defendants presented any evidence showing a voluntarily relinquishment of Title VII rights by the EEOC. The Court accordingly will grant Plaintiff's motion with respect to the waiver defense. *See EEOC v. T.I.M.E.-D.C. Freight, Inc.*, 659 F.2d 690, 693 (5th Cir. 1981) ("Title VII rights can be waived and Title VII rights can be settled. But there must be some evidence of waiver or settlement. There is none here.").

### H. Estoppel and After-Acquired Evidence.

Prior to resigning her employment with Collegeville, Honer asked an EEOC investigator whether quitting her job would hurt her case. The investigator advised Honer against resigning. Dkt. #168 ¶¶ 126-28.

Defendants contend that "[b]ecause of the EEOC's involvement in orchestrating Honer's constructive discharge claim, it is estopped from litigating this claim." Dkt. #167 at 16. Equitable estoppel requires a showing that (1) the party to be estopped knew the facts, (2) the party intended that its conduct be acted on, (3) the claimant was ignorant of the true facts, and (4) the claimant detrimentally relied on the other party's conduct. *See Salgado-Diaz v. Gonzales*, 395 F.3d 1158, 1166 (9th Cir. 2005). Defendants fail to explain how the instant facts support an equitable estoppel defense. The Court will grant Plaintiff's motion with respect to this defense.

Defendants contend that the "conspiracy" between Honer and the EEOC to "orchestrate" Honer's constructive discharge claim supports Defendants' after-acquired evidence defense. Dkt. #167 at 16. To prevail on this defense, Defendants must show that Honer's "wrongdoing was of such severity that [she] in fact would have been terminated on those grounds alone if [Defendants] had known of it at the time of [her] discharge." *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 362-63 (1995). Defendants have presented no evidence that they would have terminated Honer for seeking advice from the EEOC regarding her continued employment with Defendants. The Court will grant

1 Plaintiff's motion with respect to the after-acquired evidence defense. *See Shattuck v.*
2 *Kinetic Concepts, Inc.*, 49 F.3d 1106, 1109 (5th Cir. 1995) ("KCI did not establish that it
3 would have discharged Shattuck upon discovering that he was not a college graduate. It
4 therefore cannot obtain the relief it seeks solely on account of its after-acquired evidence.").

### I. Justification.

Defendants argue that Plaintiff cannot prevail on Honer's claim of retaliation because Defendants' decision to move Honer to other departments was justified by legitimate business considerations, namely, the need for extra coverage in those departments. Dkt. #167 at 17. Plaintiff argues that Defendants mistakenly couch what is a factual dispute – whether the decision to move Honer was made for legitimate business reasons or in retaliation for her protected activities – as an affirmative defense. Plaintiff argues that regardless of which party bears the burden of proof on this issue, it is entitled to summary judgment. Dkt. #176 at 10. The Court disagrees.

As the party seeking summary judgment, Plaintiff "bears the initial responsibility of . . . identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Plaintiff has not met its burden. Plaintiff has identified no evidence showing, as a matter of undisputed fact, that Defendants' stated reason for moving Honer to other departments was mere pretext for retaliation. *See Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000) (stating that once the defendant articulates a legitimate non-retaliatory reason for its decision, "the plaintiff bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive"). The Court will deny Plaintiff's motion with respect to the justification defense.

### J. Honer's Constructive Discharge Claim.

Defendants contend that Honer's constructive discharge claim fails because her working conditions were not intolerable and the alleged sexual harassment had ceased prior to her resignation. Dkt. #150 at 19-20. These factual issues must be resolved at trial.

"Constructive discharge occurs when, looking at the totality of the circumstances, a reasonable person in the employee's position would have felt that [she] was forced to quit

because of intolerable and discriminatory working conditions." *Wallace v. City of San Diego*, 479 F.3d 616, 625 (9th Cir. 2007) (citation and alterations omitted). "'Whether working conditions were so intolerable and discriminatory as to justify a reasonable employee's decision to resign is normally a factual question for the jury.'" *Id.* at 626 (citation omitted). Plaintiff has presented evidence from which a jury could conclude that a reasonable person would find Honer's working conditions so intolerable and discriminatory as to justify resigning. *See* Dkt. #171 ¶¶ 210-38. The Court therefore will deny Defendants' motion with respect to Honer's constructive discharge claim. *See Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 362 (9th Cir. 1987) (holding that three incidents of differential treatment over a two month period created a triable issue); *Nolan v. Cleland*, 686 F.2d 806, 813-14 (9th Cir. 1982) (holding that four incidents of differential treatment over a two year period created a triable issue).

**K.   Limon's Retaliation Claim.**

Defendants contend that Limon has failed to make a prima facie case of retaliation because there is no evidence that she was subjected to an adverse employment action. Dkt. #150 at 17. The Supreme Court recently held that a plaintiff seeking to establish an adverse employment action "must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from [engaging in protected activity].'" *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2415 (2006) (citations omitted). This test is the same as that previously adopted by the Ninth Circuit. *See Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000) (stating that "an action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity"); *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 965 (9th Cir. 2004) (same).

Plaintiff has presented the following evidence in support of Limon's retaliation claim: Shortly after Limon and other supervisors complained to Rubie's about the alleged harassment, Nitz called a management meeting. Nitz was very angry at the meeting, stating that "nobody was ever going to go around him again." Nitz threatened to terminate

1  Limon if she was to "cause trouble" in the future. Limon felt threatened by these comments
2  and believed that her job was at risk. Limon and the other charging parties were later told
3  by Rubie's general manager, John Clausen, that Nitz was "the man" at Collegeville and that
4  he "was going to run the company until the doors closed[.]" Dkt. #171 ¶¶ 186-99.

5  The Ninth Circuit has explained that "'the requisite degree of proof necessary to
6  establish a prima facie case for Title VII on summary judgment is minimal and does not even
7  need to rise to the level of a preponderance of the evidence.'" *Villiarimo v. Aloha Island Air,*
8  *Inc.*, 281 F.3d 1054, 1061-62 (9th Cir. 2002) (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d
9  885, 889 (9th Cir. 1994)). Indeed, "[t]he amount of evidence that must be produced in order
10 to create a prima facie case is 'very little.'" *Wallis*, 26 F.3d at 889 (citation and alterations
11 omitted). The Court concludes that Plaintiff has presented prima facie evidence of a
12 materially adverse action. Construed in Plaintiff's favor, the evidence shows that Nitz
13 threatened to terminate Limon if she continued to engage in protected activity and that Nitz
14 had the power to carry out the threat. This might well have dissuaded a reasonable worker
15 in Limon's position from engaging in protected activity. *See Bergin v. N. Clackamas Sch.*
16 *Dist.*, No. CV-03-1412-ST, 2005 WL 66069, at *11 (D. Or. Jan. 12, 2005) (holding that "the
17 threat of transfer was an adverse employment action"); *McGuire v. Miami-Dade County*, 418
18 F. Supp. 2d 1354, 1359 (S.D. Fla. 2006) ("Viewing Plaintiff's allegation that she was
19 threatened with demotion . . . in the light most favorable to the Plaintiff, this Court finds that
20 this allegation is sufficient to meet the prima facie requirement that Plaintiff demonstrate an
21 adverse employment action taken against her."); *see also White*, 126 S. Ct. at 2415 ("The
22 anti-retaliation provision seeks to prevent employer interference with 'unfettered access' to
23 Title VII's remedial mechanisms.") (citation omitted). The Court will deny Defendants'
24 motion with respect to Limon's retaliation claim.

25 **L.      Lopez's Hostile Work Environment Claim.**

26 Defendants contend that Lopez's hostile work environment claim fails because the
27 harassing conduct was neither severe nor pervasive. Dkt. #150 at 18-19. To establish a
28 hostile work environment based on sex, the plaintiff must prove that she was subjected to

verbal or physical conduct, that the conduct was unwelcome, and that the conduct was sufficiently severe or pervasive to alter the terms and conditions of her employment and create an abusive work environment. *See Rene v. MGM Grand Hotel, Inc.*, 305 F.3d 1061, 1065 (9th Cir. 2002) (en banc). The work environment "must be both objectively and subjectively offensive, one that a reasonable [woman] would find hostile or abusive, and one that the [plaintiff] in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).

Construing the evidence in Plaintiff's favor, the Court concludes that there is a triable issue as to whether Lopez's work environment was sufficiently hostile to violate Title VII. On two or three occasions, Lopez's immediate supervisor, Paul Cooley, walked up behind her, grabbed the rear belt loop on her pants, and pulled upward. When Lopez was then required to walk to the bathroom to readjust her pants and undergarments, Cooley said "[w]hat are [you] gonna do? Get the wedgie out of your behind?" Dkt. #171, Ex. 40 at 113. Cooley's physical contact with Lopez and these subsequent remarks occurred in front of coworkers. Dkt. #171 ¶¶ 205-08. Lopez also witnessed plant manager Mark Nitz throw objects down the front of female employees' blouses on five or six occasions. *Id*.

Defendants suggest that these acts were nothing more than mere pranks, Dkt. #150 at 19 n.10, but that is a question for the jury. A reasonable jury considering all the evidence might find that the actions and comments of Cooley and Nitz were offensive sexual harassment. The Court cannot simply adopt Cooley's view of the events. *See Ellison v. Brady*, 924 F.2d 872, 880-81 (9th Cir. 1991) ("Sexual harassment is a major problem in the workplace. Adopting the victim's perspective ensures that courts will not 'sustain ingrained notions of reasonable behavior fashioned by the offenders.'") (citations omitted). The Court will deny Defendants' motion with respect to Lopez's hostile work environment claim.

**M.     The Claim of Sexual Harassment by Nitz.**

Defendants contend that the Court lacks jurisdiction over the claim of sexual harassment by Nitz because it was not disclosed to Defendants during the EEOC investigation of this matter. Dkt. #150 at 16-17.

1  The Court has jurisdiction over any claims of discrimination "that are 'like or 2 reasonably related to' the allegations made in the EEOC charge[s], or that fall within the 3 'EEOC investigation which can reasonably be expected to grow out of the charge[s] of 4 discrimination.'" *Deppe v. United Airlines*, 217 F.3d 1262, 1267 (9th Cir. 2000) (citations 5 omitted); *see Oubichon v. N. Am. Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir. 1973) ("[T]he 6 judicial complaint . . . may encompass any discrimination like or reasonably related to the 7 allegations of the EEOC charge, including new acts occurring during the pendency of the 8 charge before the EEOC."); *Gen. Tel. Co. of the N.W. v. EEOC*, 446 U.S. 318, 331 (1980) 9 ("Any violations that the EEOC ascertains in the course of a reasonable investigation of the 10 charging party's complaint are actionable.").

11  The evidence in this case, construed in Plaintiff's favor, shows the following: 12 The three original charges alleged sexual harassment by managers at the Collegeville plant 13 and retaliation by Nitz. Dkt. #171 ¶¶ 165-68. Honer asserted in her charge that the 14 Collegeville "plant manager began to verbally harass [her] and other females in retaliation 15 for [her] complaint." *Id.* Ex. 1. The charges filed by Limon and Avalos mention Nitz 16 by name, alleging that he had verbally threatened them and had referred to them as 17 "trouble makers." *Id.* Exs. 6 & 9. Honer told EEOC investigators that Nitz had tried to 18 unfasten her bra and had harassed other female employees. *Id.* ¶¶ 170-71. Limon told 19 investigators that Nitz had made her feel uncomfortable by touching her arm in an 20 inappropriate manner. *Id.* ¶ 174.

21  Plaintiff's claim of sexual harassment by Nitz is related to the allegations made in the 22 original charges and arose out of Plaintiff's investigation of those charges. Plaintiff notified 23 Defendants of the charges and sought to conciliate the sexual harassment claims. Dkt. #149 24 ¶¶ 26-31; Dkt. #171 ¶¶ 33-40, 183-85. While Plaintiff did not specifically identify any 25 alleged harasser by name in its determination letters and conciliation proposals, Defendant 26 has cited no legal authority suggesting that such disclosure is a prerequisite to filing suit. 27 The Court concludes that it has jurisdiction over the claim of sexual harassment by Nitz. The 28 Court accordingly will deny Defendants' motion with respect to this issue. *See EEOC v.*

*Occidental Life Ins. Co. of Cal.*, 535 F.2d 533, 541-42 (9th Cir. 1976) (holding that the EEOC was allowed to litigate new claims of discrimination where the claims were discovered during an investigation of the original charges and the employer had received notice of the claims during the administrative process); *EEOC v. Hearst Corp.*, 553F.2d 579, 580-81 (9th Cir. 1976) (same).

### N.  The Potential Class Members' Claims.

Defendants request that the Court summarily adjudicate the potential class members' claims for lack of standing or jurisdiction. Dkt. #150 at 4 n.3. Defendants alternatively request that the Court strike Plaintiff's disclosure of the potential class members. *Id.* Defendants have presented no argument or legal authority in support of these requests. The Court will deny the requests because Defendants have not met their summary judgment burden. *See Celotex*, 477 U.S. at 323.

## IV.  Conclusion.

The Court will grant summary judgment in Plaintiff's favor on the conciliation requirement and the affirmative defenses of failure to exhaust administrative remedies, statute of limitations, unclean hands, waiver and estoppel, and after-acquired evidence. The Court will deny summary judgment on the affirmative defenses of laches, lack of authority, justification, and good faith efforts. The Court also will deny summary judgment on Honer's constructive discharge claim, Limon's retaliation claim, Lopez's hostile work environment claim, the claim of sexual harassment by Nitz, and the claims of potential class members.

It is unclear whether Defendants would have asserted at trial each of the affirmative defenses on which Plaintiff sought summary judgment. In future litigation before this Court, the EEOC shall seek summary judgment only on issues that it reasonably believes will be contested at trial. This will ensure the most efficient use of government and judicial resources.

**IT IS ORDERED:**

1. Plaintiff's motion for partial summary judgment (Dkt. #148) is **granted in part** and **denied in part** as set forth in this order.

- 15 -

2. Defendants' motion for summary judgment (Dkt. #150) is **denied**.

3. Plaintiff's Motion to Strike (Dkt. #181) is **denied**.

4. The Court will set a final pretrial conference by separate order.

DATED this 16th day of July, 2007.

_____
David G. Campbell
United States District Judge